**[J-87-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**


| | |
|---|---|
| IN THE INTEREST OF: N.C., A MINOR | : No. 5 WAP 2014 |
| | : |
| | : |
| | : Appeal from the Order of the Superior |
| APPEAL OF: COMMONWEALTH OF | : Court entered August 8, 2013 at No. 1258 |
| PENNSYLVANIA | : WDA 2012, vacating the Order of the Court |
| | : of Common Pleas of Clearfield County |
| | : entered July 27, 2012 at |
| | : CP-17-JV-0000071-2012 and remanding. |
| | : |
| | : ARGUED:   October 7, 2014 |


**OPINION**


**MR. JUSTICE STEVENS**                          **DECIDED:   DECEMBER 15, 2014**

In this fact-specific appeal by the Commonwealth, we consider whether the Superior Court erred in holding the right of a juvenile accused to be confronted with a witness against him conferred by the Confrontation Clause of the Sixth Amendment to the United States Constitution was violated where the juvenile court admitted into evidence an out-of-court, video-taped, forensic interview of a child complainant under the Tender Years Hearsay Act ("TYHA"), even though defense counsel did not cross-examine the child complainant who had taken the witness stand at the juvenile's contested adjudication hearing.  In light of the unique circumstances of the instant matter wherein the Commonwealth conceded continued questioning of the unconversable child complainant on direct examination would have been futile, and the juvenile court suggested she be removed from the witness stand, we hold the admission of the

recorded forensic interview of the child complainant violated the juvenile accused's right to confrontation under the Sixth Amendment. Accordingly, we affirm.

On November 5, 2011, the mother (hereinafter "Mother") of the three-year-old child complainant (hereinafter "A.D.")[1] entrusted A.D. and her other minor child, S.D., to the care of A.D.'s paternal grandmother (hereinafter "Grandmother") at the latter's home at approximately 8:30 a.m.[2] Later that afternoon, Grandmother called Mother and informed her A.D. was upset and wanted to go home. Mother brought A.D. home and noticed she was lethargic. Without any provocation, A.D. told Mother "my pee pee hurts," and that Appellee N.C. (hereinafter "N.C.") had touched her there.[3] Mother checked A.D's pudendum and noticed it appeared red and irritated. Thinking the redness was a rash, Mother applied Vaseline to the affected area and called N.C.'s father who also was Grandmother's boyfriend. N.C.'s father told Mother that N.C. had not been at the home all day, and she, thus, believed his absence meant it was not possible for N.C. to have touched A.D. inappropriately.

Mother did not take any further action on November 5, 2011; however, several days later, N.C.'s father admitted to Mother that N.C., in fact, had been present at the home on November 5th. Upon receiving this new information, Mother took A.D. to the Brockway Police Department where she informed the Chief of Police of A.D.'s allegations. An investigation ensued pursuant to which A.D. was questioned by a forensic interviewer at Western Pennsylvania Cares for Kids Child Advocacy Center (hereinafter "Western

---

[1] A.D. is now six years old, as her date of birth is March 21, 2008; she was four years old at the time of the adjudicatory hearing on May 10, 2012.

[2] A.D. and S.D. often visited with Grandmother for periods of time which periodically included overnight stays to accommodate Mother's work schedule.

[3] N.C.'s date of birth is June 28, 1997.

Pennsylvania Cares"), a facility wherein trained individuals interview children who have been abused or who are suspected of having been abused. A.D. disclosed to the forensic interviewer that N.C. had touched her pudendum, and she demonstrated digital penetration on an anatomical doll after making this revelation. Following November 5, 2011, and the interview at Western Pennsylvania Cares, A.D. told Mother at least two or three additional times that N.C. "touched her pee pee."

The Commonwealth filed a juvenile petition wherein it alleged N.C. had committed various delinquent acts against A.D. and charged him with three counts each of aggravated indecent assault[4] and indecent assault.[5] The Commonwealth also filed an omnibus pre-trial motion wherein it requested that the juvenile court admit into evidence A.D.'s statements to both Mother and the forensic interviewer regarding the alleged assault pursuant to the TYHA[6] and that due to A.D's tender age, the juvenile court permit certain special procedures during the presentation of her testimony.

---

[4] 18 Pa.C.S. §§ 3125(a)(1), (a)(7), (b).
[5] 18 Pa.C.S. §§ 3126 (a)(1), (a)(7), (a)(8).
[6] The TYHA provides, in relevant part:

> **(a) General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (2) the child either:

(continued…)

Following the April 13, 2012, hearing held on N.C.'s motion, the juvenile court entered an Opinion and Order on April 17, 2012, wherein it stated that as the Commonwealth had indicated it intended to place A.D. on the witness stand and question her on direct examination, she would be made available for cross-examination and confrontation by N.C.; therefore, the juvenile court refrained from considering A.D. unavailable and explained it would look to the TYHA for the purpose of deciding whether A.D.'s hearsay statements would be admissible. The juvenile court further noted it was

_____

(…continued)

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

**(a.1) Emotional distress.**—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian of any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

\*\*\*

42 Pa.C.S.A. §§ 5985.1(a), (a.1). In addition, Rule 802 of the Pennsylvania Rules of Evidence states: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The issue of whether or not the Commonwealth met its statutory burden under the TYHA is not before us.

uncontested that A.D.'s out-of-court statements were relevant to the charges brought against N.C., but it found that certain statements she had made to Mother would be inadmissible at the adjudicatory hearing because they lacked sufficient indicia of reliability in that the specific time at which they were made and the circumstances surrounding those spontaneous statements were not clear. Notwithstanding, the juvenile court did determine that as the time and date of A.D.'s initial assertions to Mother and of those she made during the forensic interview were known, the Commonwealth would be allowed to introduce at the adjudicatory hearing the declarations A.D. made to her Mother on November 5, 2011, as well as the complete videotaped interview made at Western Pennsylvania Cares on November 23, 2011, provided that A.D. would testify at that hearing. See Trial Court Opinion, 4/17/12 at 4-6 and Order of Court, 4/17/12.

The adjudicatory hearing was held on May 10, 2012, and it commenced with the competency portion of questioning. At that time, the prosecutor and defense counsel questioned A.D. generally regarding her name, age, family, caregivers and her ability to discern the truth from a lie. N.T. Hearing, 5/10/12, at 8-24.[7] A.D. both verbalized her responses to such queries and nodded or shook her head, despite the efforts of counsel and of the juvenile court to encourage her to articulate all responses. Ultimately, the juvenile court determined A.D. was not incompetent to testify under Rule 601 of the

---

[7] As A.D. was a child under the age of 14 who had been called to testify as a witness, the juvenile court was required to make an independent determination of competency, which necessitated a finding that A.D. possessed: a capacity to communicate, including both an ability to understand questions and to frame and express intelligent answers; the mental capacity to observe the actual occurrence and the capacity of remembering what it is that he is or she is called to testify about; and a consciousness of the duty to speak the truth. See Commonwealth v. Walter, ___ Pa. ____, ____, 93 A.3d 442, 451 (2014).

Pennsylvania Rules of Evidence and directed the prosecutor to commence direct examination. Id.[8]

The prosecutor asked A.D. whether she knew N.C. and whether he was present in the courtroom, and A.D. nodded yes and pointed to N.C. Id. at 25-26. When the prosecutor inquired if she wished to discuss N.C., A.D. shook her head in the negative. She reacted the same way when asked whether talking about him made her happy and whether she liked him, had ever played games with him, had been at the same house with him, or had ever had fun with him. Id. at 26-27. At this juncture, the prosecutor addressed A.D. as follows:

> Okay. [A.D.], I need to ask you this again. And I don't want you to have to be here any longer, but I have to ask you these things. And I have to ask you to actually talk, because [the juvenile court] can't hear you if you don't talk. And he has really good ears. So I know he'll hear you if you do talk. Okay?

Id. at 27.

Despite the prosecutor's instruction, A.D., once again, shook her head when asked if she ever had had fun with N.C. and was unresponsive when the prosecutor inquired whether there was a time when she did not have fun with N.C. Id. at 28. A.D. shook her head when asked if anything bad had ever happened to her around N.C. and failed to react at all when the prosecutor queried if anything had happened to her while

---

[8] Under Pa.R.E. 601(b), a court may deem an individual to be incompetent to testify if the court determines that due to a mental condition or immaturity the individual:
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
> (3) has an impaired memory; or
> (4) does not sufficiently understand the duty to tell the truth.
Pa.R.E. 601(b).

she was with N.C. that she did not like, at which time A.D.'s father requested that he be permitted to encourage A.D. to speak. Id. Defense counsel objected, and a short recess was taken so that A.D. could be removed from the courtroom. Defense counsel then expounded that the basis for his objection was the concern that any participation in the questioning by A.D.'s father would affect her responses. Id. at 29-31. At this early stage of the proceeding, the prosecutor stated "[A.D.] clearly does not want to talk about this. That's obviously, for the [c]ourt to decide, but I would submit that she does not want to talk about N.C." Id. at 30. Following further discussion among the juvenile court and counsel, it was agreed that when A.D. returned to the courtroom, she would be permitted to sit on her father's lap so that she might feel more comfortable. Id. at 31-32.

A.D. initially smiled when she realized she would be testifying from a new vantage point, and after assuring her she was safe and encouraging her to tell the truth, the prosecutor resumed questioning. A.D. responded to the prosecutor's questions about her comfort level, whether she knew she was safe and whether she could remember the prosecutor's name with head gestures and nods. She replied "Yeah" when the prosecutor inquired: "Can you --- Show me that you can talk. Can you say yes? . . . Can you prove to [the trial court] that you can talk? You can say yes to him. Can you say yes? . . . Now, let's keep talking instead of just nodding your head, okay? Can we keep talking?" Id. at 33-34. However, A.D. nodded positively when asked if she knew and liked N.C. She shook her head in the negative when the prosecutor inquired whether he ever played games with her, pretended that he was a shark, ever touched her, or if she wished to talk about whether N.C. ever had touched her. Id. at 34-35. A.D. then hugged her father, and while the prosecutor assured her it was acceptable for her to

do so, he reminded her it was important for her to be truthful so that she could avoid being placed on a time out. Id. at 36.[9]

Though A.D. smiled when asked if she wished to tell the truth, she was reticent when next asked if N.C. had ever touched her and began to play with her father's hands by twisting his fingers. Id. at 36. A.D. continued to shake her head or respond "Uh-uh" to additional queries concerning whether N.C. ever touched her as is evident in the following excerpt from her direct examination:

> [The prosecutor]: [A.D.], tell me, can you tell me the truth on this, do you want to talk about [N.C.]?
> [A.D.]: Uh-uh.
> [The prosecutor]: Why don't you want to talk to me about [N.C.]? You have to answer that, honey. Okay. Why don't you want to talk to me about [N.C.]? Can you tell me nice and loud with your voice?
> [A.D.]: Uh-uh.
> [The prosecutor]: You won't tell me?
> [A.D.]: (Witness shakes head).
> [The prosecutor]: Why won't you tell me?
> [A.D.]: (Witness is twisting dad's fingers).
> [The prosecutor]: [A.D.], did you ever tell anybody else--
> [A.D.]: (Witness shakes head).
> [The prosecutor]:-- about [N.C.]? Did you ever tell anyone else about [N.C.]?
> [A.D.]: (No response). (Witness is fidgety).
> [The prosecutor]: Can you look at me, honey?
> [A.D.]: (Witness shakes head).
> [The prosecutor]: She shook her head no. [A.D.], look at me.
> [A.D.]: (No response).
> [The prosecutor]: Let the record reflect she won't even look at me.
> [The prosecutor]: [A.D.], honey, I'm not your daddy, but would you please answer my questions?
> [A.D.]: (Witness shakes head).
> [The prosecutor]: And you're saying no. Why won't we talk about [N.C.]? Why can't we talk about [N.C.]? Can you just tell me that out loud?
> [A.D.]: (Witness shakes head).
> THE COURT: Can you tell me why, [A.D.]?

---

[9] A.D. had indicated that she would be put on a time-out if she told a lie or did something wrong during the competency portion of the hearing. N.T. Hearing, 5/10/12, at 18-19.

[A.D.]: I want to go home.

[The prosecutor]: She said, "I want to go home." For the record, I think [the court reporter] caught it.

THE COURT: [A.D.], [A.D.], I can let you go home it you tell me why.

[A.D.]: (No response).

[The prosecutor]: Honey, we have to know why?

[A.D.]: I want to go home.

[The prosecutor]: I know you want to go home, honey, but we have to ask you. We're not trying to be mean. We're not trying to be mean, okay. Can you tell us why you don't want to talk about [N.C.]?

[A.D.]: I want to go home.

[The prosecutor]: I know you want to go home. You've told me that, but I have to ask you and you need to answer me[.]

[A.D.]: Uh-uh.

[The prosecutor]: Yeah, you do. Yeah, you do.

[A.D.]: Uh-uh.

[The prosecutor]: I know you don't want to answer me. You need to tell me why. Why don't you want to talk about [N.C.]?

[A.D.]: (Witness is twirling her hair). I want to go home.

[The prosecutor]: I know you want to go home, honey. You told me that. I know that. Okay. But I'm not going to say you can go home. I want to know why you won't talk about [N.C.]. Have you ever been in the same house with [N.C.]?

[A.D.]: Uh-uh.

[The prosecutor]: I don't know if we should take a break, Your Honor, and give her a break from this and come back.

Id. at 37-39.

Following this line of questioning, the juvenile court indicated a ten minute break should ensue to allow A.D. a chance to take a brief walk outside. A.D. left the courtroom for the second time, at which time defense counsel objected to any further questioning of the child, and the prosecutor responded as follows:

[Defense counsel]: Just for the record, Your Honor, I would like to note our objection to continuing the questioning in [the] face of the child's obvious assertions that she doesn't want to participate. She wants to go home. She's not responsive to [the prosecutor's] questioning to any degree that's being helpful to the relevant facts of this particular case. It's our position that to continue to cajole her or otherwise to force her into answering questions is rapidly approaching a coercive situation with this young child. And unless there's some particular reason why we should

continue this, we would simply have to object to any continued type of coercion into forcing her into answering questions.

[The prosecutor]: Your Honor, she's a witness on the witness stand. She's four years old. Everyone who has had children knows that children will try to manipulate you, and they will try to be obstinate, and they will try to do anything they can to be difficult sometimes to get out of dealing with an unpleasant duty. **And she does not want to talk right now. I think we all can agree on that. She doesn't want to talk**. So I wanted to take a short break, a short break to see if that will help her decide, you know, that she's not as weary of this process. Because she's been up there for quite a while. I didn't take note of the time when we first started for the record, but she's been up there for a while now. And I'm hoping that one final chance of talking to her, maybe she will be willing to talk. **But at the end, she didn't want to answer anything. I mean, I think the record--I think the Court, obviously, can make these observations of his own accord**, **but she was extremely not wanting to talk**.

Id. at 40-41. (Emphasis added).

The juvenile court overruled defense counsel's objection at that juncture and in support of its decision declared:

THE COURT: I'll say this much for the record, not considering that she's a four-year-old, but had she been a 14-year-old, I would consider whether officers should be charging her with false statements. Now, I know that's not a situation to get into with a four-year-old, but I intend to let the record reflect, hey, you have to say something here.
Now, if she comes back and she says nothing, we have to cross the next hurdle on what's going to happen with this. But I just don't want to let the prosecution that's been going on since last November go with the first sign.
Certainly, I think anyone would be nonhuman if we don't feel a little discomfort with a four-year-old on the stand. So we'll see what happens when we come back.
Objection is noted but overruled at this point.

Id. at 41-42.

Before A.D. resumed testifying, the prosecutor informed the juvenile court she wanted to sit with her maternal grandmother, and she was permitted to do so. Though she answered "Nowhere" when questioned about where she had gone during the recess,

she nodded or shook her head in response to other questions concerning her activity at that time. She was totally unresponsive when asked about N.C., and the record indicates A.D. also began fidgeting and playing with her grandmother's hands when his name was mentioned. The following exchange ensued:

> [The prosecutor]: Okay, honey, I just want to ask you a few more things, okay. I have to ask you these things. It's my job, okay, honey?
> [A.D.]: (Witness nodded head).
> [The prosecutor]: Now, [N.C.], do you want to talk about him?
> [A.D.]: (Witness shakes head).
> [The prosecutor]: You don't. Can you tell us why you don't want to talk about him? Why?
> [A.D.]: (No response).
> [The prosecutor]: Do you like [N.C.]?
> [A.D.] (No response).
> [The prosecutor]: Can you hear me, honey?
> [A.D.]: Uh-uh.
> [The prosecutor]: You can't hear me? Honey, you answered my questions really good first thing this morning. You were doing really good. Do you remember the apple? Do you remember talking about the apple?[10]
> [A.D.]: (No response).
> [The prosecutor]: Honey, let me ask you this, okay. Can you tell me what do you think of [N.C]? Is he nice?
> [A.D.]: Uh.
> [The prosecutor]: Is that no? What is that?
> [The prosecutor]: Your Honor, let the record reflect that [A.D.]'s curling up in a fetal position into a ball[.]
> THE COURT: The record will reflect that.
> [The prosecutor]: Honey, is [N.C.] nice?
> [A.D.]: (No response).
> [The prosecutor]: She's further curling up in a ball.
> THE COURT: The record will reflect that.
> [The prosecutor]: Your Honor, I don't know if the [c]ourt wants to inquire at all. **I don't think I'm going to get anywhere**.

---

10 A.D. had been shown a photograph of an apple as part of a line of questioning designed to ascertain her ability to discern the truth from a lie. See N.T. Hearing, 5/10/12, at 12-14.

THE COURT: [A.D.]. [A.D.], can you look at me? [A.D.]. [A.D.] is not acknowledging me so, [A.D.'s father] why don't you go ahead and take her.[11]

. . . [defense counsel], do you want to ask her any questions?[12]

[Defense counsel]: No.

THE COURT: Okay. Just wanted to get that clear before I entertain--okay. Go ahead. I think I will, for the record, I mean, my position in calling her was to see if she would testify so we don't have to inquiry [sic] what went on in the break, but **she's not going to testify**.

Id. at 44-46 (Emphasis added).

Later in the hearing, following the testimony of the forensic interviewer and over defense counsel's objection on the grounds that it constituted testimonial evidence and its admission would be violative of N.C.'s right to confrontation under the Sixth Amendment, the juvenile court admitted the digital video disc (hereinafter "DVD") of the forensic interview into evidence. Id. at 77, 87. In support of its ruling, the juvenile court stated the following:

[THE COURT]: **I thought we pushed her as far as any person should reasonably be pushed, and she didn't testify on the issue that we're here for**, but-- I have my evidence book back open because **I found her to be competent** because she sufficiently, in my mind, under certain duties told the truth. And she was able to express herself so that she could be understood.

Now, the fact of the matter is she either refused to express herself or -- and for that matter, I mean, I guess to the extent she expressed herself on this issue, because after I swore her in, I found her to be competent. She expressed that nothing happened so -- or that she didn't ever play with [N.C.]; they were never in the same house, [N.C.] I mean, et cetera, et cetera. She nodded her head a few times and you made sure that the record reflected that she said no.

So the question that I was looking for is some definition of what the legislature meant by testifying in an proceeding. As I said in the earlier

---

[11] In its Opinion, the Superior Court erroneously indicates the juvenile court was addressing defense counsel at this juncture. In re N.C., ___ Pa. Super. ____, ____, 74 A.3d 271, 276 (2013) (reargument denied October 1, 2013).

[12] The Superior Court misquotes this query as "[D]o you have any questions?" Id. at ____, 74 A.3d. at 276.

hearing and as it still stands, there's not a case that defines what that means.

But I wanted to go back to reiterate I think after the witness guidelines, she is competent. She remembers who her teacher is; who the people around her are; could respond to questions about truthfulness and non[-]truthfulness; indicated that she understood that the oath would put her in a timeout. **So she certainly was competent. She was here on the witness stand and she did testify.**

So--and I can say as an American citizen, I've always had a problem with this section of the statute, but I think the statute's been met.

And I've already given my reasons for allowing the testimony in my written opinion. So I'm going to overrule the objection and allow [forensic interviewer] to testify.

*** 

. . . **I can't force anymore** [sic] **out of her, nor do I want to. But I've already found what the legislature tells me the law is. She testified. I have to**. . . . Now, legislature tells me, because of her age and she testified, because cross-examination would have only opened the door to her saying no. But then she changed her mind and said, no, I told the truth to the police, I'm lying today, here is what happened.

So the legislature tells me if she testifies and I look back and find those earlier statements -- which I already have-- to be reliable, then they come in.

Now, that doesn't preclude evidence or testimony or even secure guilt beyond a reasonable doubt, but it does gets [sic] us through this point.

So I do think under the statute, as it stands and under <u>Crawford</u>, we met the confrontation burden, and its met the statutory requirements of 42 Pa.C.S.A. 5985. So your objection is overruled. I'll let you say your objection when the disk comes up, and I'll overrule it at that time just so you have that. Because there may be some other testimony in that regard other than just the video.

<u>Id</u>. at 79-80, 82, 83-84 (Emphasis added).

The juvenile court ultimately adjudicated N.C. delinquent of one count of aggravated indecent assault, a felony of the second degree,[13] and ordered N.C. to be placed on probation for one year which was to run consecutively to a probation violation disposition that had been imposed in a separate matter, undergo DNA testing, and pay costs.

---

[13] 18 Pa.C.S. § 3125(a)(7).

N.C. filed a timely appeal from the dispositional order wherein he argued, inter alia, that his right to be confronted with the witness against him conferred by the Confrontation Clauses of the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Commonwealth of Pennsylvania's Constitution had been violated when the juvenile court admitted into evidence the statements A.D. had made to the forensic interviewer because A.D. was unavailable for cross-examination at his adjudicatory hearing.  In its one-page opinion filed pursuant to Pa.R.A.P. 1925(a), the juvenile court found that A.D.'s reticence during direct examination and defense counsel's failure to pose any questions regarding her statements and actions at the forensic interview on cross-examination did not render her unavailable for legal or constitutional purposes.  In doing so, the juvenile court reasoned that although A.D. had been "less than forthcoming" when questioned about N.C. and whether he had hurt or touched her, citing to her responses during the competency portion of the hearing, it determined she was competent to testify and able to express herself regarding other subjects and, thus, was available to testify at the adjudicatory hearing for Sixth Amendment , Article I, Section 9, and TYHA purposes. Juvenile Court Opinion, filed 10/17/12, at 1 citing N.T. Hearing, 5/10/12 at 8-25.  The juvenile court further surmised defense counsel could have cross-examined A.D. in regard to her statements and actions both in the courtroom and during the forensic interview but apparently concluded that it would have been futile to do.  Id. at 1 citing N.T. Hearing, 5/10/12, at 46.

In a published opinion, the Superior Court vacated the dispositional order and remanded for a new adjudicatory hearing on the grounds that the juvenile court's admission of A.D.'s recorded statements into evidence during the adjudicatory hearing

violated N.C.'s right of confrontation as provided by the Sixth Amendment to the United States Constitution because A.D. had not been available for cross-examination and the statements were testimonial in nature. In re N.C., ___ Pa. Super. ____, 74 A.3d 271 (2013) (reargument denied October 1, 2013). The Court summarized the TYHA and noted that the United States Supreme Court rejected the "indicia of reliability" standard like that set forth in the TYHA as violating the Sixth Amendment to the United States Constitution as it pertains to testimonial hearsay. Id. at ____, 74 A.3d at 274. It reiterated that in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531 (1980), the High Court had held that an unavailable witness's statement against a criminal defendant was admissible provided that the statement was shrouded in an "adequate indicia of reliability," which existed when the testimony at issue fell within a "firmly rooted hearsay exception," or contained "particularized guarantees of trustworthiness." It further stressed that the High Court's subsequent decision several decades later in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004) overruled Roberts in part when it rejected the "indicia of reliability" standard where a witness is deemed unavailable. Instead, it summarized the holding of the Crawford Court as requiring a determination of whether statements are testimonial or non-testimonial in nature before out-of-court-statements by an unavailable witness may be admissible at trial. In re. N.C., at ____, 74 A.3d at 275, citing Roberts, at 66, 100 S.Ct. at 2531; Crawford, at 68, 124 S.Ct. at 1354. The Superior Court concluded that under Crawford, where the admission of out-of-court testimonial evidence is at issue, the Confrontation Clause demands that a witness be unavailable and that a defendant has had a prior opportunity for cross-examination of that witness. In re N.C., at ____, 74 A.3d at 275 citing Crawford, at 68, 124 S.Ct. at 1354.

The Superior Court next reviewed the juvenile court's determination that A.D. had been available for cross-examination at the adjudicatory hearing and that the recorded forensic interview, therefore, was properly admitted into evidence. While the Superior Court acknowledged defense counsel had been able to elicit limited verbal and non-verbal responses from A.D. during the competency portion of the hearing, it stressed that during direct examination A.D. provided no testimony concerning the November 5, 2011, incident. Specifically, the Court highlighted that A.D. shook her head when the prosecutor asked whether she liked N.C. and whether she had ever been in a house or played games with him, she nonverbally identified N.C. by pointing at him, and she either shook her head in denial or provided no response at all when the prosecutor inquired several times whether N.C. ever had touched her before ultimately curling herself into a fetal position. As such, the Superior Court concluded the juvenile court improperly found A.D. to have been "available" for Sixth Amendment purposes.

The Superior Court first found A.D.'s out-of-court statements to the forensic interviewer were testimonial in nature because they had been procured at an interview arranged by police for the purpose of eliciting statement to be used to prosecute N.C.[14] In support of this finding, it noted the forensic interviewer testified all agencies, including law enforcement, were able to watch A.D.'s interview at Western Pennsylvania Cares on a television set located in a separate conference room and that the forensic interviewer acknowledged she momentarily left the interview to confer with the investigative team,

---

[14] This Court has found that a statement is testimonial when it is uttered during an interrogation the primary purpose of which was to establish or prove past events relevant to a later criminal prosecution. Commonwealth v. Allshouse, 614 Pa. 229, 250, 36 A.3d 163, 175 (2012). The parties do not challenge this finding, and upon our review of the record, we find it was a proper one.

that she obtained assistance from the police department and Children and Youth Services while conducting the interview, and that she provided the district attorney's office and the Chief of Police with a DVD recording of the interview. In re N.C., at ____, 74 A.3d at 278 citing N.T. Hearing, 5/10/12, at 105-107, 135, 137, 151. In light of the fact that defense counsel had not had an opportunity to cross-examine A.D. during that interview, the Superior Court concluded that the evidence of record did not support the juvenile court's finding A.D. had been available for cross-examination at the adjudicatory hearing and its admission of her out-of court, recorded statement violated N.C.'s right of confrontation as provided by the Sixth Amendment to the United States Constitution. Id. citing Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-2274; Commonwealth v. Allshouse, 614 Pa. 229, 250, 36 A.3d 163, 175-76.

The Commonwealth filed a petition for allowance of appeal, and this Court granted its petition on March 7, 2014, to decide the following issue:

> Whether an alleged delinquent's Sixth Amendment Confrontation Clause rights were violated by the admission of a video-taped forensic interview when defense counsel did not attempt to cross-examine the victim at the contested hearing. [15]

---

[15] Although the Commonwealth has not premised its argument upon Article I, Section 9 of the Pennsylvania Constitution, that provision was amended in 2003 to provide, in relevant part: "In all criminal prosecutions the accused hath a right to be confronted with the witnesses against him. . . ." to make it identical to the Confrontation Clause of the Sixth Amendment to the United States Constitution. Accordingly, our Confrontation Clause analysis in the present case would be the same under both the United States Constitution and the Pennsylvania Constitution. See Commonwealth v. Williams, ___ Pa. ____, ____, n. 2, 84 A.3d 680, 682 n. 2. (2014). Notwithstanding, we express no opinion as to Article I, Section 9 as that constitutional provision is not at issue herein.

(continued…)

In re N.C., 86 A.3d 863 (2014) (order).

An appellate court's standard of review of a trial court's evidentiary rulings which include rulings on the admission of hearsay is abuse of discretion. Commonwealth v. Walter, ___ Pa. ____, ____, 93 A.3d 442, 449 (2014) citing Commonwealth v. Delbridge, 578 Pa. 641, 653 n. 8, 855 A.2d 27, 34 n. 8 (2003). However, whether a defendant has been denied his right to confront a witness under the Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States *via* the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067 (1965), is a question of law, for which our standard of review is de novo and our scope of review is plenary. Commonwealth v. Yohe, ___ Pa. ____, ____, 79 A.3d 520, 530-531 (2013) citing Commonwealth v. Cannon, 610 Pa. 494, 22 A.3d 210 (2011).

The Commonwealth observes that the Sixth Amendment right to confrontation, as expounded in Crawford, allows for the admission of testimonial hearsay statements at trial only when the witness is unavailable and there had been a prior opportunity for cross-examination of that witness or where the witness does testify. The Commonwealth stresses that when the juvenile court asked defense counsel if he wished to ask A.D. any questions at the adjudicatory hearing, counsel declined the opportunity to do so and contends that in light of defense counsel's perhaps strategic decision not to cross-examine A.D., N.C. cannot claim successfully that A.D. had been unavailable to testify. The Commonwealth posits that defense counsel had been able to elicit responses from A.D. during the competency stage of the hearing and may have been

(…continued)

able to garner the same result had he made a sincere attempt to conduct cross-examination. Brief of Appellant at 14-15.

The Commonwealth further contends that N.C.'s claims evince a misapprehension of the right to confrontation guaranteed by the Sixth Amendment in that the dispositive concern thereunder is not the manner in which a witness performs during direct examination but rather whether the defendant was given the opportunity to conduct an effective cross-examination of that witness. In this regard, the Commonwealth suggests the High Court's decisions in Delaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292 (1985), and United States v. Owens, 484 U.S. 554, 108 S.Ct. 838 (1988), while not directly on point factually, stand for the proposition that a witness's evasiveness, refusal to cooperate, or lack of memory of certain events does not preclude a finding that a defendant's right to cross-examine that witness under the Confrontation Clause has been satisfied. Brief of Appellant at 16-17.[16]

The Commonwealth also cites nonbinding decisions including a published opinion from our Superior Court and caselaw from various other jurisdictions which it espouses

---

[16] In Delaware v Fensterer, our Supreme Court held that the defendant's Sixth Amendment right to confrontation had not been violated where the prosecution's expert witness testimony was admitted despite the fact the expert witness had been unable to recall the basis for his opinion at trial but he had been cross-examined regarding his inability to recall the basis for his opinion. The Supreme Court specifically noted that since no out-of-court statement which had not been subjected to cross-examination and the other safeguards of trial testimony had been admitted as substantive evidence, "the adequacy of a later opportunity to cross-examine, as a substitute for cross-examination at the time the declaration was made, is not in question. . . ." Id. at 21, 106 S.Ct. at 295. Moreover, in United States v. Owens, the High Court held neither the Confrontation Clause of the Sixth Amendment nor Federal Rule of Evidence 802 had been violated where a witness's prior, out-of-court identification of the defendant as his assailant was admitted though that witness had been unable due to memory loss to explain the basis for his identification on cross-examination.

lend support to its position. In <u>Commonwealth v. Mollett</u>, ___ Pa. Super. ____, 5 A.3d 291 (2010), the Superior Court considered whether a defendant who had shot and killed a police officer had been denied a meaningful opportunity to cross-examine a witness at trial where the witness, who had made a statement to police prior to trial, invoked his Fifth Amendment right against self-incrimination or stated he could not recall certain events. <u>Id</u>. at ____, 5 A.3d at 307-308. Noting that the witness's statement to police had been testimonial, the Superior Court stated that for it to have been admissible without violating the Confrontation Clause, the witness must have been unavailable to testify at trial and the defendant must have had an opportunity to cross-examine him. Finding the witness's concern with incriminating himself had not been valid and quoting Owens, <u>supra</u>, 484 U.S. at 559-560, 108 S.Ct. at 98, for the proposition that witnesses who claim they cannot remember events are not considered unavailable for cross-examination, the Superior Court found the witness had been available to testify and did, in fact, respond to questions at trial. <u>Id</u>. at____, 5 A.3d at 308.

The Commonwealth also posits the New Jersey Supreme Court's case of <u>State v. Nyhammer</u>, 197 N.J. 383, 963 A.2d 316 (2009), <u>cert</u>. <u>denied</u>, ___ U.S. ____, 130 S.Ct. 65 (2009) is "strikingly similar" to the within matter. Brief of Appellant at 18. Therein, the court held a defendant could not assert he had been denied his right to confront a witness unless he first attempted to pose questions on cross-examination concerning the core accusations of the case where the eleven-year-old witness answered preliminary questions with "some ease," but the prosecutor obtained testimony concerning her forensic interview with "great difficulty." While defense counsel cross-examined the witness, she posed what the court termed a number of "safe questions," or "questions

intended to elicit answers that would reveal only mundane information, rather than information that might damage or, even worse, implicate her client." Id. at 395, 963 A.2d at 323. The New Jersey Supreme Court refused to presume the child witness would have remained silent or unresponsive to questions defense counsel had never asked, and the excerpts from the trial testimony it reiterates in its opinion evince the child was able to provide several-word verbal responses to various questions on both direct and cross-examination. Stressing that defense counsel questioned the child witness on a variety of subjects but failed to introduce any questions about the accusations the witness had made at age nine in her video-taped forensic interview, the New Jersey Supreme Court found the trial court properly had admitted those prior statements at trial. Id. at 413-14, 963 A.2d at 413-415.[17]

---

[17] The Commonwealth additionally discusses cases from other jurisdictions which it posits iterate the same principles: See Brock v. State, 270 Ga. Ct. App. 250, 605 S.E.2d 907 (2004) (ten-year-old victim deemed available for cross-examination where the trial court observed she was not going to testify due to her uncontrollable crying, but advised defense counsel that he would be provided an opportunity to conduct cross-examination the next morning and defense counsel immediately stated no questions would be forthcoming); Conn v. State; 300 Ga. Ct. App. 193, 685 S.E.2d 745 (2009) (child available for cross-examination for purposes of the Confrontation Clause though she provided limited verbal responses and primarily nonverbal responses to specific questions about molestation on direct examination when prosecution ended its examination, indicated defense counsel may have some questions, child nodded her head affirmatively, but defense counsel chose not to cross-examine her); In re Brandon P., ___ Ill. App. Ct.____, 992 N.E.2d 651 (2013) (delivering the judgment of the court) (child available for cross-examination where she was present and testified primarily with nods and shakes of the head on direct examination but defense counsel indicated he had no questions regarding the incident in question); State v. Williams, ___ Mo.Ct. App. ____, 400 S.W.3d 904 (2013) (child witness available for cross-examination despite demonstrating emotional difficulty and refusing at one point to take the witness stand during trial because she was present and testified about some of the allegations brought against the (continued…)

In reliance upon the aforementioned authority, the Commonwealth urges that A.D.'s behavior and responses to queries on direct examination are not dispositive and suggests that if defense counsel had truly desired to question A.D. about the allegations she made in her forensic interview, he could have requested another recess to allow A.D. to watch the recorded interview, which given a young child's fascination with viewing herself on video "would have been highly likely to capture A.D.'s attention, overcome her reticence and to evoke responses from her regarding the key allegations of the case." Brief of Appellant at 27. Thus, so says the Commonwealth, because defense counsel had an opportunity to cross-examine A.D. but forwent it, he cannot not now successfully claim his right to confrontation had been violated.

To the contrary, N.C. argues the High Court's rulings in <u>Crawford</u> and <u>Owens</u> require meaningful participation in the courtroom proceeding before a witness may be deemed available for cross-examination and that the Commonwealth's arguments stand for the proposition that the mere presence of a witness in the courtroom will satisfy a defendant's constitutional right to confront that witness. Specifically, N.C. stresses the

---

(…continued)

defendant, returned to the witness stand and defense counsel was offered the occasion to cross-examine her regarding her in-court testimony and recorded interview, though he chose not to do so); <u>State v. Cameron M.</u>, 307 Conn. 504, 55 A.3d 272 (2012) <u>cert. denied</u>, 133 S.Ct. 2744, 186 L.Ed. 2d 194 (2013) (six-year-old child witness available for cross-examination though defense counsel did not question her where she testified on direct examination that she remembered the forensic interview, but not its specific content, and also indicated she lacked any memory of inappropriate contact her father might have had with her when she was three-years-old). The Commonwealth also includes a string cite of additional Illinois cases it maintains are consistent with <u>In re Brandon P.</u>, <u>supra</u> though it distinguishes three others and references two unpublished decisions from Michigan and Delaware, respectively, to bolster its argument. Brief of Appellant at 20-24.

Owens Court ruled even prior to the Crawford decision that effective cross-examination guaranteed under the Confrontation Clause requires a witness who appears and takes the stand at trial and willingly responds to questions. Brief of Appellee at 10. N.C. posits that it is difficult to reconcile the Commonwealth's position A.D. had been available for cross-examination at the adjudicatory hearing with the prosecutor's abandonment of his effort to conduct direct examination and the juvenile court's own observation that A.D. was not going to testify. Brief of Appellee at 13. N.C. stresses that, as the Superior Court observed, A.D. repeatedly refused to discuss the November 5, 2011, incident on direct examination despite the juvenile court's providing her with two recesses. N.C. also remarks that following the second recess, A.D. became increasingly reticent and exhibited advancing signs of distress with each question on direct examination which culminated in her curling herself into a fetal position. N.C. avers A.D's behavior at this juncture belies the Commonwealth's suggestion that another break at the request of N.C. could have led A.D. to answer questions readily on cross-examination. Brief of Appellee at 14-15. N.C. notes that this Court has distinguished the waiver of a right from its forfeiture in Commonwealth v. Lucarelli, 601 Pa. 185, 971 A.2d 1173 (2009) and maintains that defense counsel's conduct cannot be construed as either waiving, intentionally or impliedly, or forfeiting N.C.'s right to cross-examine A.D., as counsel's attempt to do so would have been futile given his witnessing of the prosecutor's and the juvenile court's failed attempts to encourage A.D. to be forthcoming in her direct testimony. Brief of Appellee at 15-16.

N.C. further avers the caselaw upon which the Commonwealth relies is factually distinguishable from the case at bar and does not represent the accepted view in federal

confrontation clause jurisprudence. Specifically, N.C. explains that the witness in Mollett, supra, was present and willingly answered questions under oath, though his responses had been unexpected. Brief of Appellee at 17. N.C. further asserts in Nyhammer, supra, the issue before the New Jersey Supreme Court had not been whether the an out- of-court statement had been admitted properly under the New Jersey Tender Years Hearsay Act, but rather whether the defendant had had an opportunity to cross-examine the young witness on the recorded statement. N.C. stresses the Nyhammer court's analysis seems to infer that had defense counsel objected to the admission of the recorded statement as violating Crawford, no core accusations would have been in the record upon which defense counsel could have cross-examined the young witness. Brief of Appellee at 18-19. N.C. also emphasizes that the "availability" determination the Illinois intermediate court had made in In re Brandon P., supra, was later rejected by its high court in In re Brandon, 2014 IL 116653, 10 N.E. 3d 910 (2014).

A review of the latter decision reveals the prosecutor asked approximately eighteen questions on direct examination to which the child responded primarily with head nods and single-word verbal responses. Without requesting a recess, the prosecutor abruptly stated no further questions would be forthcoming, and defense counsel declined to conduct cross-examination. At the close of the state's case in chief, defense counsel argued the child witness was unavailable to testify at trial, and, therefore, a detective could not testify as to statements she had made to him because those statements were testimonial under Crawford. As the defendant had had no prior opportunity to cross-examine the witness, defense counsel submitted that the admission of the detective's testimony would violate defendant's right to confrontation under the

Sixth Amendment. While the trial court did not agree that the child was unavailable as a witness, it held her statements to the detective had not been testimonial and were admissible under Illinois's statutory hearsay exception for sexual abuse victims under the age of thirteen. 725 Ill. Comp.Stat. 5/115-10.

Upon review, the Illinois Supreme Court explained that the trial court, the assistant state's attorney, and respondent's counsel all agreed at trial that the child witness had been unavailable, but the appellate court raised the issue of her availability sua sponte and rejected that concession. In finding the intermediate court had erred, the Illinois Supreme Court determined the record before it revealed the child had been unavailable to testify at trial "based upon both her youth and fear[,]" and remarked that "M.J. could barely answer the trial court's preliminary questions, and then completely froze when the State attempted to begin its direct examination of her." In re Brandon P. at ____, 10 N.E.3d at 920.

N.C. concludes the Commonwealth's suggestion that defense counsel could have done what it could not-- coax A.D. into meaningful participation at the adjudicatory hearing-- by showing her the forensic interview during a recess is unfounded, unsupported by any caselaw to which it cites, and would have required defense counsel to have first introduced and utilized the very testimonial out-of-court statements which it has always maintained were inadmissible in the proceeding. Brief of Appellee at 15. N.C. reasons that defense counsel's foregoing of an attempt to cross-examine A.D. under the circumstances herein constituted an acknowledgement of the fact that an additional effort to elicit responses from her would have "amounted to an exercise in absurdity" and may have subjected the child to further trauma. Brief of Appellee at 16.

The Pennsylvania Association of Criminal Defense Lawyers ("PACDL") filed an *amicus curiae* brief on behalf of A.D. wherein it echoes N.C.'s assertion that the decisional caselaw upon which the Commonwealth relies in its brief either has been reversed or ignores telling factual differences. PACDL distinguishes the witnesses in those cases, who were admittedly reserved and taciturn on direct examination but answered at least some questions on cross-examination, from A.D. who "froze completely--even physically" during direct examination prompting both the juvenile court and the prosecutor to state explicitly on the record that further questioning by either side would render no response from A.D. Amicus Brief at 5-6. PACDL emphasizes that, as a policy matter, "[t]he Commonwealth's proposed rule would encourage, and indeed require, defense counsel to engage in questioning that, while evidently futile, would nevertheless threaten to exacerbate the possible trauma to the child witness. The result would be the worst of both worlds-- questioning that may do actual harm to the witness while providing no benefit to the defense and no assistance to the factfinder." Amicus Brief at 11. PACDL urges that were this Court to affirm the Superior Court, we would not necessarily negatively affect future prosecutions that involve child victims of sexual assaults because of the continuing presence of various safeguards in every courtroom designed to ensure the comfort and well-being of child witnesses. Amicus Brief at 4.

It is undisputed that A.D.'s video-taped, forensic interview conducted at Western Pennsylvania Cares was testimonial under Crawford and its progeny; thus, the only issue before this Court is whether the Superior Court erred in determining its admission into evidence at trial violated N.C.'s rights under the Confrontation Clause of the Sixth

Amendment to the United States Constitution.[18]  The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him."  U.S. CONST., amend. VI.  The High Court in Crawford, supra, rejected the indicia of reliability standard which it had applied previously in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531 (1980) as violative of the Sixth Amendment and fundamentally altered Confrontation Clause jurisprudence with regard to testimonial hearsay when it held that the Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant, regardless of whether the statements are deemed reliable by the trial court, unless the declarant is unavailable to testify and the defendant had a previous opportunity to cross-examine the witness.  Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.  See also Commonwealth v. Yohe, 621 Pa. 527, 544, 79 A.3d 520, 530-31 (2013); Commonwealth v. Allshouse 614 Pa. 229, 242, 36 A.3d 163, 171 (2012).  In keeping with its framing of the necessary inquiry as whether the defendant had an opportunity to cross-examine the witness, rather than whether the witness was, in fact, cross-examined, the Crawford Court espoused that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."  Crawford, 541 U.S. at 59, 124 S.C. at 1369 (citation omitted).

While the right to confrontation is a fundamental one, this Court has explained it is not absolute.  See Commonwealth v. Wholaver, 605 Pa. 325, 989 A.2d 883 (2010) cert.

---

[18] An accused's right to confront and cross-examine witnesses against him applies to both in-court testimony and to out-of-court statements introduced at trial, regardless of the admissibility of those statements under the law of evidence.  Crawford, 541 U.S. 36, 124 S.Ct. 1354 (2004).  We do not speak to whether A.D.'s statements in the forensic interview satisfied the requirements of the TYHA, as this issue is not before us.

denied 131 S.Ct. 332, 178 L.Ed.2d 216 (2010) (discussing generally the "forfeiture by wrongdoing" exception to the hearsay rule and the Confrontation Clause and upholding a trial court's admission of two murder victims' preliminary hearing testimony at defendant's trial). In addition, when determining whether a defendant has a right to present expert testimony to rebut the Commonwealth's introduction of evidence in support of its motion pursuant to 42 Pa.C.S.A. § 5985 to allow a child witness to testify in a room outside of the courtroom, this Court recently explained:

> the right to confrontation is basically a trial right, and includes both the opportunity for cross-examination of the witnesses and the occasion for the jury to consider the demeanor of the witnesses. Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

Commonwealth v. Williams, ___ Pa. ____, 84 A.3d 680, 684 (2014).

With this in mind, we turn to the salient determination of whether A.D. was available for cross-examination at N.C.'s adjudicatory hearing. A.D. was four years of age when she took the witness stand, and the hearing commenced with questions posed in an effort to discern her competency to testify regarding the charges brought against N.C. During both direct and cross-examination at that time, A.D. answered questions concerning various innocuous topics such as her birthday, school, family, and her ability to differentiate the truth from a lie with nods and shakes of her head, along with a few verbal responses. N.T. Hearing, 5/10/12 at 8-24. Ultimately, the juvenile court found A.D. was competent to testify, and the prosecutor commenced direct examination on the merits.

Notwithstanding, as the aforementioned excerpts from the adjudicatory hearing illustrate and a review of the record in its totality evinces, A.D. was unable to provide

direct examination testimony regarding any contact N.C. might have had with her. While the Commonwealth maintains that A.D. "made the **statement** a number of times that N.C. had *not* touched her," and "alternatively **said** that she didn't like N.C. and that she did[,]" A.D. never verbalized a response with regard to the behavior leading to the charges N.C. faced. Brief of Appellant at 17-18 (bold emphasis added, italics in original). To the contrary, despite the prosecutor's persistent encouraging of A.D. to speak so the juvenile court could hear her, she responded to his queries with head movements and only a few, single-word verbal responses and became totally unresponsive to his repeated efforts to elicit information regarding inappropriate contact N.C. may have had with her on November 5, 2011. Her ultimate recoiling into a fetal position prompted the juvenile court to acknowledge on the record that A.D. was not going to participate any further and to suggest she should be removed from the witness stand. Yet, despite A.D.'s courtroom behavior at this juncture and the fact that two recesses had already been taken and several changes in caregivers had been made in an effort to make A.D. more comfortable, all to no avail, the Commonwealth suggests that had defense counsel requested another break A.D.'s cooperation would have been eminent. We do not agree.

Moreover, it is difficult to harmonize the juvenile court's ultimate determination at the adjudicatory hearing that A.D. was available for cross-examination under the Sixth Amendment with its unequivocal statement on the record earlier that "she's not going to testify" and its observation she did not testify on the substantive issues of the case. N.T. Hearing, 5/10/12, at 46, 79. Its contemporaneous courtroom observations also belie the juvenile court's characterization of A.D.'s behavior as merely "less than forthcoming," in

its opinion pursuant to Pa.R.A.P. 1925(a). However, a review of its explanation for its reasoning on the record suggests the juvenile court conflated the federal constitutional challenge that was before it--whether N.C.'s right to confrontation under the Confrontation Clause of the Sixth Amendment had been satisfied-- with the separate issues of A.D.'s competency to testify at the adjudicatory hearing under Pa.R.E. 601 and of whether the forensic interview was admissible under the TYHA.

We cannot find the confrontation element of Crawford was met herein, for Crawford and its progeny require an opportunity for effective cross-examination which N.C. simply did not have. Contrary to the juvenile court's analysis, defense counsel's indication he had no questions on cross-examination cannot be deemed to have been a strategic choice, for any attempt on his part to continue to question this young witness whose fear and fragility were evident during direct examination and whose last expression before melding herself into a fetal position on her grandmother's lap was a desire to go home would have been, at best, pro forma. In addition, A.D. did not act merely with trepidation at the hearing; she provided virtually no verbal responses on direct examination, despite two recesses and as many changes in caregivers to comfort her while she was on the witness stand which effectively left defense counsel with no opportunity to cross-examine her on the charges brought against N.C.

A.D.'s inability to speak and physical recoiling simply is not of the ilk of the witnesses in the caselaw to which the Commonwealth cites who either could not remember certain details or refused to cooperate with counsel. As such, the Superior Court correctly determined that the juvenile court improperly deemed A.D. to have been available for cross-examination and that N.C.'s right to confront her guaranteed under the

Confrontation Clause of the Sixth Amendment to the United States Constitution had been violated when it admitted her recorded statements, which were testimonial in nature, into evidence during N.C.'s adjudicatory hearing without N.C.'s having had a prior opportunity to cross-examine her.

The decision of the Superior Court is Affirmed.

Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille and Messrs. Justice Saylor, Eakin and Baer and Madame Justice Todd join the opinion.