J. S08023/17

**NON-PRECEDENTIAL DECISION -- SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
SHAUN MICHAEL HOWARD, : No. 769 WDA 2016
:
Appellant :

Appeal from the Judgment of Sentence, April 29, 2016,
in the Court of Common Pleas of McKean County
Criminal Division at No. CP-42-CR-0000591-2014

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND SOLANO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 07, 2017**

Shaun Michael Howard appeals from the April 29, 2016 judgment of sentence entered in the Court of Common Pleas of McKean County after a jury convicted him of 7 counts each of rape by forcible compulsion, rape of a child, involuntary deviate sexual intercourse by force, involuntary deviate sexual intercourse with a child less than 13 years of age, and incest of minor -- child is less than 13; 4 counts of aggravated indecent assault of a child less than 13 years of age; 12 counts of indecent assault -- victim less than 13 years of age; 8 counts of indecent exposure; and 1 count each of endangering welfare of children and corruption of minors -- sexual nature.[1]

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(c), 3123(b), 4302(b)(1), 3125(b), 3126(a)(7), 3127(a), 4304(a)(1), and 6301(a)(1)(ii), respectively.

The trial court sentenced appellant to an aggregate term of incarceration of 45 to 104 years. We affirm.

The record reflects that appellant's convictions resulted from various sexual assaults that he inflicted upon his then 11-year-old daughter. The record further reveals that following imposition of sentence, appellant did not file post-sentence motions. On May 24, 2016, however, appellant filed a timely notice of appeal to this court. Appellant then timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court then filed a "1925(a) statement" wherein it incorporated its September 15, 2015 opinion and order[2] concerning certain evidentiary rulings that appellant now challenges.

Appellant raises the following issues:

I. Did the court commit error in admitting the testimony of the [sexual assault nurse examiner ("SANE nurse")] when the hearsay testimony was unreliable; alternatively[,] when the testimony violated the confrontation clause of the constitution?

II. Did the court error [sic] in admitting the letter of [the victim] because it was unrelieable [sic][;] alternatively[,] when it violated the right to confrontation of [appellant]?

---

[2] We note that although the trial court incorporated its "September 19, 2015" order and opinion, the record reflects that the order and opinion which it incorporated in its "1925(a) statement" were docketed on September 15, 2015.

Appellant's brief at 2 (capitalization in original omitted).

In his first issue, appellant contends that the victim's statements to Cheryl Wier, the SANE nurse who examined the victim ("Nurse Wier"), were testimonial in nature and, therefore, inadmissible under the Confrontation Clause of the Sixth Amendment of the United States Constitution.

> The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." We have held that this bedrock procedural guarantee applies to both federal and state prosecutions. ***Pointer v. Texas***, 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965).

***Crawford v. Washington***, 541 U.S. 36, 42 (2004).

"[T]he Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant, regardless of whether the statements are deemed reliable by the trial court, unless the declarant is unavailable to testify and the defendant had a previous opportunity to cross-examine the witness." ***In re N.C.***, 105 A.3d 1199, 1215 (Pa. 2014).

> [I]n analyzing whether a statement is testimonial, and, therefore, subject to the protections of the Confrontation Clause under ***Crawford [v. Washington***, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)], a court must determine whether the primary purpose of the interrogation was to establish or prove past events relevant to a later criminal prosecution. In making the determination as to the primary purpose of an interrogation, a court first should determine whether the interrogation occurred during the existence of an ongoing emergency, or what was perceived to be an ongoing emergency. Although the existence—actual

or perceived—of an ongoing emergency is one of the most important factors, this factor is not dispositive because there may be other circumstances, outside of an ongoing emergency, where a statement is obtained for a purpose other than for later use in criminal proceedings. In determining the primary purpose of an interrogation, a court must also objectively evaluate the circumstances surrounding the interrogation, including the formality and location, and the statements and actions of both the interrogator and the declarant.

*Commonwealth v. Allshouse*, 36 A.3d 163, 175-176 (Pa. 2012), *cert. denied*, 133 S.Ct. 2336, 185 L.Ed.2d 1063 (2013). Although the United States Supreme Court has declined to adopt a categorical rule excluding statements to individuals who are not law-enforcement officers from the Sixth Amendment's reach, it nevertheless recognizes that such statements are much less likely to be testimonial than statements made to law-enforcement officers. *Ohio v. Clark*, 135 S.Ct. 2173, 2181, 192 L.Ed.2d 306, 315 (2015).

With respect to our standard and scope of review, "[w]hether [a]ppellant was denied [his] right to confront a witness under the [C]onfrontation [C]lause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Yohe*, 39 A.3d 381, 384 (Pa.Super. 2012), *affirmed*, 79 A.3d 520 (Pa. 2013), *cert. denied*, 134 S.Ct. 2662, 189 L.Ed.2d 209 (2014) (citations omitted).

Preliminarily, we note that the record reflects that the parties stipulated that the victim was unavailable to testify. (Notes of testimony, 8/5/15 at 6.) We further note that although the certified record before us is silent as to whether appellant had the previous opportunity to cross-examine the victim, appellant fails to advance any argument that he was denied such opportunity. Appellant's complaint is that because the SANE exam was not conducted during the existence of an emergency and because its primary purpose was to gather evidence, the victim's statements to Nurse Wier were testimonial in nature and, therefore, inadmissible under the Confrontation Clause.

The record reflects that on August 10, 2014, while the victim was in the kitchen with her mother, N.P., the victim "blurt[ed]" out that she had something to tell her mother and then stated that "[h]er daddy was touching her." (Notes of testimony, 8/5/15 at 7, 10.) N.P. testified that she "instantly dropped," "started to cry," and "didn't know what to think" when her daughter told her that. (*Id.* at 8.) When N.P. asked the victim where appellant was touching her, the child would not answer. (*Id.*) N.P. then telephoned her friend Tiffany Lasher, who was at work, and told Ms. Lasher what the victim had told her.[3] (*Id.* at 8, 30.)

---

[3] The record is unclear as to whether N.P. telephoned Ms. Lasher on the day that the victim made the statements to N.P. or whether she telephoned Ms. Lasher the following day.

As soon as Ms. Lasher finished working that day, she went to N.P.'s home, picked up the victim, and took her to her home in order to remove the child from a potentially sexually abusive environment. (*Id.* at 30-31.) Ms. Lasher testified that she did not ask the victim any questions about what the victim had told her mother until August 13, 2014. (*Id.* at 31.) On that day, Ms. Lasher and M.B., the child's paternal aunt, asked the victim "what was going on." (*Id.*) The victim responded that her "[d]addy was touching her everywhere." (*Id.*) When the two women told the child that she needed to be more specific, the child pointed towards her vagina and anus and said that "he was touching her there." (*Id.* at 32.) The victim also told the two women that appellant "place[d] his penis in her mouth." (*Id.*) Ms. Lasher testified that during this conversation, the victim was crying and upset. (*Id.*) Ms. Lasher then telephoned the victim's mother, N.P., to tell her what the victim had revealed. (*Id.* at 33.) Within 15 minutes, N.P. arrived at Ms. Lasher's home, and then N.P., Ms. Lasher, and M.B. took the victim to the emergency room at Bradford Regional Medical Center. (*Id.*)

Nurse Wier testified that when she met with the victim in the emergency room, she met with her alone, and no law enforcement was present. (*Id.* at 42.) Nurse Wier further testified that the purpose of her conversation with the victim was "[f]or a medical exam related to sexual assault." (*Id.*) She explained that the questions that she posed to the

victim were part of a "medical exam [] for the health and welfare of the patient." (*Id.* at 44.) She acknowledged her understanding of the difference between a medical exam and a forensic exam, explaining that police initiate forensic examinations. (*Id.* at 44-45.) Nurse Wier further testified that the "whole purpose of the medical exam" is for the "evaluation and treatment of any patient." (*Id.* at 45.) She also explained that a patient's answers to the questions she poses guide the exam. (*Id.*) For example, Nurse Wier stated that she asks sexual assault victims whether and into what orifice an accused ejaculated because the answer to that question determines whether and where the victim would need to be checked for sexually transmitted diseases. (*Id.*) Nurse Wier further testified that prior to examining the victim in this case, she had not determined whether she would call police. (*Id.* at 46.)

With respect to her examination of the victim, Nurse Wier testified that when she asked the victim why the victim thought she was being seen, the child stated, "Because my dad is touching me." (*Id.* at 43.) When Nurse Wier asked the victim where her father was touching her, the child "gestured toward her chest and genital area." (*Id.*) When asked whether appellant touched her with his hands and/or with his penis, the child nodded affirmatively. (*Id.* at 44.) When asked if appellant touched her with his mouth, the child nodded "no." (*Id.*) When asked if appellant put his penis in the child's mouth, the victim nodded "yes." (*Id.*) The victim also

acknowledged that appellant had ejaculated in her mouth and penetrated her anus with his penis. (*Id.*)

Here, appellant claims that the victim's SANE exam was not part of an ongoing emergency because "she did not visit the hospital for her examination until three days after disclosing the alleged abuse to her mother" and because "[t]here was no threat to the safety of [the victim] when she was at the hospital and the preliminary observation determined that [she] was not experiencing any trauma." (Appellant's brief at 13.) Appellant is mistaken.

The record reflects that the victim initially told her mother that appellant had been touching her. At that point, the victim would not reveal any further information about the sexual assaults. The victim's disclosure that appellant had been touching her, however, resulted in the victim's immediate removal from the family home in order to prevent future sexual assaults at the hands of appellant. It was not until three days after the victim's removal from the family home that she revealed to Ms. Lasher and M.B. some of the details of the sexual assaults that appellant had inflicted upon her. The victim's revelations of the details of these sexual assaults constituted a then-present emergency of suspected child sexual abuse and prompted the victim's mother, Ms. Lasher, and the victim's aunt to immediately take the victim to the emergency room for a sexual assault examination to determine, among other things, whether the victim sustained

internal injury and/or contracted sexually transmitted diseases. Therefore, appellant's claim that no emergency existed at the time of the victim's SANE exam because three days had gone by since she revealed to her mother that "daddy was touching her" entirely lacks merit.

Appellant further contends that the victim's statements to Nurse Wier were testimonial in nature because "the purpose of a SANE exam is to gather evidence." (Appellant's brief at 13.) Appellant advances no argument to support that contention; rather, appellant baldly asserts that Nurse Wier's testimony that the purpose of the exam is for medical treatment was "pre-textual in nature." (*Id.*) Our review of the record demonstrates that Nurse Wier clearly and unequivocally testified that the purpose of the SANE exam was to medically treat an 11-year-old child who was potentially a sexual-assault victim. Therefore, appellant's claim that the statements that the victim made to Nurse Wier were inadmissible under the Confrontation Clause lacks merit.

Appellant next contends that the trial court erred in admitting Nurse Wier's testimony concerning statements that the victim made to her during the SANE exam because "[the victim's] statements to [Nurse Wier] were not reliable enough to be admissible under the [tender years hearsay exception]." (Appellant's brief at 14.)

In reviewing the admissibility of evidence, "an appellate court may only reverse upon a showing that the trial court abused its discretion. An

abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa.Super. 2015) (citations omitted).

The Pennsylvania Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

The Tender Years Act, 42 Pa.C.S.A § 5985.1, creates an exception to the hearsay rule for victims of childhood sexual abuse. *See Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 988 (Pa.Super. 2007). The tender years exception provides for the admissibility of certain statements that otherwise may be considered hearsay, as follows:

> **(a) General rule.--**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. [§ 31 (relating to sexual offenses)], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> > (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the

> > statement provide sufficient indicia of reliability; and
>
> > (2) the child either:
>
> > > (i) testifies at the proceeding; or
> >
> > > (ii) is unavailable as a witness.[4]

42 Pa.C.S.A. § 5985.1(a).

"The tender years exception allows for the admission of a child's out-of-court statement because of the fragile nature of young victims of sexual abuse." ***Commonwealth v. Lukowich***, 875 A.2d 1169, 1172 (Pa.Super. 2005), ***appeal denied***, 885 A.2d 41 (Pa. 2005). A statement admitted under the tender years exception must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making. ***Commonwealth v. O'Drain***, 829 A.2d 316, 320 (Pa.Super. 2003) (citation omitted). The standard for determining whether the statements possess the required indicia of reliability was set forth in ***Idaho v. Wright***, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Obvious factors tending to demonstrate reliability include: (1) the spontaneity and consistent repetition of the statements; (2) the mental state of the declarant; (3) the use of terminology unexpected in a child of similar age;

---

[4] As previously noted, the record reflects that the parties stipulated that the victim was unavailable to testify. (Notes of testimony, 8/5/15 at 6.)

and (4) the lack of a motive to fabricate. ***Commonwealth v. Walter***, 93 A.3d 442, 451 (Pa. 2014).

Preliminarily, we note that because the ***Crawford*** Court rejected the "indicia of reliability" standard where a witness is deemed unavailable, we are first required to determine whether the statements are testimonial or non-testimonial in nature before determining their reliability under the tender years exception. ***See N.C.***, 105 A.3d at 1208-1209. For the reasons set forth above, we have found that the statements were not testimonial in nature. Therefore, we may proceed to the reliability determination.

Appellant claims that the statements were unreliable and, therefore, inadmissible because "[the victim] was very reluctant to speak about the alleged abuse[, and she] would avoid eye contact and would mostly respond with nonverbal gestures, such as pointing and nodding[.]" (Appellant's brief at 14.) Appellant further contends that the statements lacked reliability because the victim "had been subject to frequent questioning by [her aunt, M.B.,] and only disclosed details of the 'touching' when pressed." (***Id.***) The record belies appellant's claims.

The record demonstrates that the victim spontaneously disclosed the sexual abuse inflicted upon her by appellant when she "blurted" out to her mother that she had something to tell her mother, immediately followed by the revelation that appellant had been touching her. Additionally, the statements that the victim made to Ms. Lasher and her aunt, M.B., were

consistent with what she had told her mother. Further, the statements that the victim made to Nurse Wier were consistent with the statements that she had made to Ms. Lasher and M.B. As for the victim's mental state, Nurse Wier described the victim as "very anxious," "quiet," "withdrawn," and "nervous." (Notes of testimony, 8/5/15 at 44.) That, coupled with the victim's reluctance to speak about the abuse, her avoidance of eye contact, and her use of nonverbal gestures demonstrates the 11-year-old victim's fragility, not her unreliability. Moreover, nothing in the record reveals that the victim used terminology unexpected of a child her age. Finally, nothing in the record supports the conclusion that the victim had a motive to lie. In fact, the record demonstrates that at the time of the tender years hearing, the victim "still love[d] her dad." (*Id.* at 10.) Therefore, because the record demonstrates that the statements the victim made to Nurse Wier possessed sufficient indicia of reliability, the trial court properly exercised its discretion in admitting those statements into evidence.

In his second issue on appeal, appellant complains that the trial court erred in admitting into evidence a letter that the victim wrote to her aunt, M.B., in June 2015 because it was testimonial in nature and, therefore, protected by the Confrontation Clause or, alternatively, unreliable and, therefore, inadmissible under the tender years exception. Once again, appellant is mistaken.

The record reflects that the victim wrote the letter to her aunt, M.B., on June 11, 2015. (Notes of testimony, 12/17/15 at 6, and Commonwealth Exhibit 1.) The record further reveals that between the time that the victim revealed the sexual abuse to her mother and others in August 2014 and the time that she wrote this letter to her aunt in June 2015, the victim was withdrawn and refused to speak about the sexual abuse with anyone, including her counselor at Children & Youth Services ("CYS") and her aunt, M.B., with whom she was then living. M.B. explained:

> . . . I tried to talk to her, like, every other day or so, couple days a week, whatever trying to get her to talk to the counselor, you know, CYS or whatever. She wouldn't even talk to me anymore. So, on that day, I was like, you know, I was trying to get her to talk to me again, you know, I was, like, I just want to know the truth. You got to talk to me. You got to talk to somebody, anybody. Write it down, whatever. And at that time, my husband had called and I, you know, he asked me what I was doing, and I had said I was trying to talk to [the victim], trying to get her to talk to me again, and she won't talk to me, she won't talk to CYS, she won't talk to anybody. She -- I just -- I don't know what else to do. I said she won't write it down or anything like that, so at that point, she's like, "Oh, I'll write it down." So, I went and got her a notepad and a pen and -- and I continued to be on my -- on my phone with my husband at that time.

Notes of testimony, 1/17/15 at 6-7.

Additionally, it is relevant to the Confrontation Clause determination that the victim wrote the letter for and to her aunt and not for and to law enforcement or the Commonwealth. *See Clark*, 135 S.Ct. at 2182

(reiterating that "[c]ourts must evaluate challenged statements in context, and part of that context is the questioner's identity" (citation omitted)). "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." **Id.** (citation omitted). Here, no doubt exists that the relationship between a niece and her aunt is far different than the relationship between a citizen and a law enforcement officer. Additionally, even though M.B. testified that she knew that the letter would ultimately be given to police (notes of testimony, 12/17/15 at 13), the record clearly demonstrates that M.B.'s first objective in having the victim write the letter was to get the victim to open up about the sexual abuse that appellant had inflicted upon her. Notably, M.B. testified that she herself was the victim of childhood sexual abuse and, therefore, she knows the importance of "get[ting] it out and open." (**Id.** at 17.) Because the record clearly demonstrates that the primary purpose of the writing was to get the victim to open up about the sexual abuse that she had suffered and not to create a record for trial, the letter falls outside the scope of Confrontation Clause protection.

Finally, appellant contends that the letter lacked reliability and was, therefore, inadmissible under the tender years exception because "[t]he letter used language that [the victim] had not used before[,] [t]he letter contained much more explicit descriptions of body parts and actions than

any of her previous statements," and "the evidence clearly suggests that [M.B.] played a major influence in the drafting of the letter." (Appellant's brief at 15-16.) Having made the determination that the letter was not testimonial in nature, we may now address appellant's unreliability claim.

The record demonstrates that the victim voluntarily wrote the letter. The record further shows that the victim had severe difficulty communicating in the spoken word. Our review of the words the victim used in the letter to describe male genitalia and certain sex acts are consistent with the words a 12-year-old girl would choose. Additionally, although the description of the sexual assaults set forth in the letter is more detailed than what Nurse Wier testified to, what the victim wrote in the letter is consistent with the statements she made to Nurse Wier, Ms. Lasher, and M.B. concerning the oral and anal sex that appellant subjected her to. The record supports the trial court's conclusion that "[there is] nothing about the circumstances that would make the reliability questionable." (Notes of testimony, 12/17/15 at 31.) Accordingly, the trial court properly exercised its discretion in admitting the letter into evidence under the tender years exception.

Judgment of sentence affirmed.

J. S08023/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2017