J-A27036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRIN VINCENT | : | |
| | : | |
| Appellant | : | No. 782 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 30, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010191-2016

BEFORE: STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:         **FILED DECEMBER 09, 2020**

Appellant, Darrin Vincent, appeals from the judgment of sentence of $13^{1}/_{2}$ to 27 years' incarceration, imposed after he was convicted by jury of first-degree felony robbery, possession of an instrument of crime, false imprisonment, and simple assault.[1] After careful review, we affirm.

This case arose out of the robbery of Norris Brown (Victim) at the bar that he owned, Brownie's Par Four Lounge, at 7173 Ogontz Avenue in Philadelphia on December 15, 2014. The robbery was recorded on the bar's video surveillance system. On June 20, 2016, Appellant was charged with the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 907(a), 2903(a), and 2701(a)(1) and (3), respectively.

above offenses and other theft and assault offenses. The case was tried to a jury in September 2018.

During jury selection, one prospective juror, Juror No. 15, testified that he was a security guard and had previously been a bar owner for 20 years and had been robbed and shot at. N.T. Trial, 9/17/18, at 70-71. Juror No. 15 was examined by the trial court concerning whether these experiences would affect his ability to be fair if selected as a juror. *Id.* at 70-73. Appellant's trial counsel moved to strike Juror No. 15 for cause, and the trial court denied the motion. *Id.* at 74-75. Appellant's counsel used one of his peremptory challenges to strike Juror No. 15 and exhausted all of his peremptory challenges before the last juror was selected. *Id.* at 75, 147-48.

At trial, the Commonwealth played to the jury and introduced in evidence the videotape of the robbery. N.T. Trial, 9/18/18, at 81-82, 84-88, 91-100; N.T. Trial, 9/19/18, at 14-20; N.T. Trial, 9/20/18, at 19-20; Commonwealth Ex. 9B. The videotape showed the perpetrator hitting Victim in the head and knocking him down, pointing a sharp object that appears to be a knife at Victim when Victim resisted, and taking things from Victim and putting them in his pocket. Commonwealth Ex. 9B. Appellant was identified as the perpetrator by a witness who knew him and recognized him on the videotape. N.T. Trial, 9/19/18, at 69-70. In addition, Appellant's DNA was on a Styrofoam cup found at the scene that the videotape showed the perpetrator drinking from. N.T. Trial, 9/18/18, at 88-91, 96; N.T. Trial,

- 2 -

9/19/18, at 57-59, 74-79; N.T. Trial, 9/20/18, at 17-19; Commonwealth Ex. 9B.  Victim, who was 83 years old at the time of the robbery, passed away of causes unrelated to the case prior to trial.  N.T. Trial, 9/19/18, at 84-85.  One of the police officers who first arrived on the scene, however, testified, over Appellant's objection, to statements made by Victim concerning the robbery.  N.T. Trial, 9/18/18, at 56-62, 66-70.

On September 21, 2018, the jury convicted Appellant of first-degree felony robbery, possession of an instrument of crime, false imprisonment, and two counts of simple assault and acquitted him of the other charges that had not been nolle prossed by the Commonwealth.  N.T. Trial, 9/21/18, at 25-27.  On November 30, 2018, the trial court sentenced Appellant to consecutive terms of 10-20 years' incarceration for the robbery conviction, $2^1/_2$ to 5 years for possession of an instrument of crime, 1 to 2 years for false imprisonment, and no further penalty for the two simple assault convictions, resulting in an aggregate sentence of $13^1/_2$ to 27 years' incarceration.  Appellant timely filed a post-sentence motion, which the trial court denied on March 4, 2019.  This timely appeal followed.

Appellant presents the following issues for our review:

1. Did not the trial court err in denying the defense challenge for cause of a prospective juror who had been the victim of crimes similar to the one at issue, forcing the defense to use a peremptory challenge?

2. Did not the trial court err in allowing hearsay testimony concerning the deceased complainant's out-of-court statements to police, thus violating Appellant's Federal and Commonwealth

- 3 -

constitutional rights to confront the witnesses against him, where the trial court had prior to trial granted Appellant's motion *in limine* to exclude those statements, and, by later admitting those statements, the court abused its discretion and violated its own ruling?

Appellant's Brief at 4.

In his first issue Appellant argues that the trial court's denial of his motion to strike Juror No. 15 for cause was reversible error. A trial court's decision whether to disqualify a prospective juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion. ***Commonwealth v. Clemat***, 218 A.3d 944, 951 (Pa. Super. 2019); ***Commonwealth v. Penn***, 132 A.3d 498, 502 (Pa. Super. 2016).

> The test for determining whether a prospective juror should be disqualified is whether he [or she] is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

***Clemat***, 218 A.3d at 951 (ellipses omitted, brackets in original) (quoting

***Commonwealth v. Briggs***, 12 A.3d 291 (Pa. 2011)).[2]

---

[2] While Appellant used a peremptory challenge to strike Juror No. 15 and Juror No. 15 therefore did not serve on the jury, that has no effect on our analysis. Where a defendant is forced to use one of his peremptory challenges to strike a juror who should have been excused for cause and exhausts his peremptory

Juror No. 15, like Victim, had been a bar owner and while he was a bar owner had been a victim of the same type of crime, robbery. N.T. Trial, 9/17/18, at 70-71. The fact that a juror was a victim of the same type of crime or has a close relationship with a person who was a victim of the same type of crime, however, does not require that the juror be stricken for cause if the juror's testimony demonstrates that he can be fair and impartial notwithstanding that experience. **Commonwealth v. Cox**, 983 A.2d 666, 682-83 (Pa. 2009) (no abuse of discretion in denial of motion to strike juror in capital murder case whose son had been murdered where juror "assured the trial court that she could render a fair and impartial verdict and that her personal tragedy would play no role in her assessment of the case"); **Clemat**, 218 A.3d at 951-52 (no abuse of discretion in denial of motion to strike juror in drug case whose close friend died two weeks earlier from a drug overdose where juror testified without hesitation that it would not affect her ability to be fair and impartial).

Here, Juror No. 15 testified without hesitation or equivocation that the robberies and his past bar ownership would not affect his ability to be fair and impartial and he showed no sign that these experiences affected him emotionally. N.T. Trial, 9/17/18, at 70-73. Juror No. 15 testified:

---

challenges before the jury is seated, the failure to strike that juror for cause cannot be affirmed as harmless error. **Penn**, 132 A.3d at 505. Here, Appellant exhausted his peremptory challenges before all the jurors were selected.

THE COURT: And you work now as a security guard?

PROSPECTIVE JUROR NO. 15: Now, yes.

THE COURT: Is there anything about that occupation that might interfere with your ability to serve fairly and impartially in this case?

PROSPECTIVE JUROR NO. 15: Nothing what I do now. I was in the bar business for 20 years.

*          *          *

THE COURT: What did you do in the bar business?

PROSPECTIVE JUROR NO. 15: I owned a bar.

THE COURT: You owned a bar. Okay. Is there anything about that fact that you owned a bar for 20 years that might interfere with your ability to serve fairly and impartially in this case where it's alleged, among other things, that this defendant assaulted and robbed a bar owner?

PROSPECTIVE JUROR NO. 15: I'm just -- I just put that out there so nobody will say later on you didn't tell me, because I was robbed a couple times, been shot at, the whole nine yards. I was in the business for 20 years, you know. I've been through everything that goes with the bar business. But, I mean, I can still decide right or wrong or whatnot.

THE COURT: There you go. So in other words, that part of your life experience informs you just like ours informs us, but it wouldn't create a bias in you for or against the defendant; is that correct?

PROSPECTIVE JUROR NO. 15: Right. Right.

THE COURT: All right. And when you indicated that you or someone close to you has been the victim of a crime, I guess you were thinking at least in part about some of those situations you just mentioned?

PROSPECTIVE JUROR NO. 15: Right. Right. Yeah.

THE COURT: Is there anything about any other situation that we haven't discussed that might interfere with your ability to serve fairly and impartially in this case with regard to being the victim of a crime, you or someone close to you?

- 6 -

PROSPECTIVE JUROR NO. 15: No.

\*          \*          \*

THE COURT: And you indicated that you or someone close to you has been eyewitness to a crime.

PROSPECTIVE JUROR NO. 15: Right.

THE COURT: Is there anything about any of those experiences or your relationship with anyone involved that might interfere with your ability to serve fairly and impartially in this case?

PROSPECTIVE JUROR NO. 15: No.

*Id.*

The trial court concluded, based on Juror No. 15's answers and its observation of his demeanor, that Juror No. 15 would be able to be fair and impartial despite his experiences. Trial Court Opinion at 5.[3]  Moreover, the risk that a juror would be affected merely because he identified with Victim was attenuated in this case because the evidence of the crime was a video recording, not testimony from Victim, and Appellant's identity as the perpetrator was proved solely by a witness other than Victim and by DNA evidence.  The trial court's denial of Appellant's motion to strike Juror No. 15 for cause was therefore not an abuse of discretion and does not constitute grounds for reversal.  *Cox*, 983 A.2d at 682-83; *Clemat*, 218 A.3d at 951-52.

---

[3] In contrast, the trial court excused for cause two other prospective jurors who had been robbery victims because their answers on voir dire showed that they were emotionally affected by the crime.  N.T. Trial, 9/17/18, at 112; N.T. Trial, 9/18/18, at 13-18.

In his second issue, Appellant argues that the police officer's testimony concerning what Victim told him about the robbery violated his right to cross-examine the witnesses against him under the Confrontation Clause of the Sixth Amendment to the United States Constitution. **See** U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him").[4] Although a trial court's evidentiary rulings are ordinarily reversible only for abuse of discretion, whether admission of evidence violated Appellant's rights under the Confrontation Clause is a question of law subject to our plenary, *de novo* review. **In re N.C.**, 105 A.3d 1199, 1210 (Pa. 2014); **Commonwealth v. Cheng Jie Lu**, 223 A.3d 260, 264 (Pa. Super. 2019); **Commonwealth v. Williams**, 103 A.3d 354, 358 (Pa. Super. 2014).

The Confrontation Clause prohibits admission of out-of-court testimonial statements of an unavailable witness that the defendant has not had the opportunity to cross-examine. **Michigan v. Bryant**, 562 U.S. 344, 354 (2011); **Davis v. Washington**, 547 U.S. 813, 821 (2006); **Commonwealth v. Allshouse**, 36 A.3d 163, 171 (Pa. 2012); **Cheng Jie Lu**, 223 A.3d at 264. The Confrontation Clause, however, applies only to testimonial statements

---

[4] While Appellant in his second question also references violation of a Pennsylvania state constitutional confrontation right, he does not assert any violation of any Pennsylvania constitutional right in the argument section of his brief. The only issue before us is therefore whether the admission of this evidence violated his federal constitutional Confrontation Clause rights.

and does not prohibit admission of out-of-court statements that are nontestimonial. ***Bryant***, 562 U.S. at 354; ***Davis***, 547 U.S. at 821; ***Allshouse***, 36 A.3d at 173. Not all statements to police are testimonial; informal statements made by an unavailable witness to police or other first-responders to enable them to deal with an ongoing emergency are nontestimonial and their admission does not violate the Confrontation Clause. ***Bryant***, 562 U.S. at 354-56; ***Davis***, 547 U.S. at 822; ***Allshouse***, 36 A.3d at 172; ***Williams***, 103 A.3d at 359-63.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

***Davis***, 547 U.S. at 822; ***Allshouse***, 36 A.3d at 172 (quoting ***Davis***).

Here, Victim's statements to the police officer that he had been attacked, describing the assailant, and reporting that the assailant pointed a knife at him, N.T. Trial, 9/18/18, at 59-62, were informal statements for the primary purpose of enabling police to address an ongoing emergency. These statements were made at the scene to the officers who arrived in response to a report of a robbery in progress. ***Id.*** at 56-57. Although Victim was not seriously injured, he was in a disheveled state and under emotional impact from the crime. ***Id.*** at 58-59. The officers to whom Victim made the statements that were admitted at trial were the officers responding to the

emergency, not the detectives investigating the scene and assembling evidence. *Id.* at 56, 59, 64.[5]

The fact that the robbery was over and the perpetrator had fled before the officers arrived does not negate the primary purpose of these statements to enable the police to deal with an ongoing emergency. Where a threat to the public still exists even though the crime in question is complete, a victim's informal statements to police or other first-responders are properly held to be nontestimonial statements to enable the police or other first-responders to deal with the emergency. *Bryant*, 562 U.S. at 363, 371-78; *Williams*, 103 A.3d at 360-63.

> An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue.

*Bryant*, 562 U.S. at 363; *see also Allshouse*, 36 A.3d at 174 (quoting *Bryant*). Where, as here, there is an armed assailant whose criminal intentions are not obviously limited to the one particular victim, informal statements immediately after the crime concerning the nature of the attack, the perpetrator and how he is armed, enable the police to deal with an ongoing emergency and are nontestimonial. *Bryant*, 562 U.S. at 363, 371-78

---

[5] The trial court granted Appellant's motion to exclude Victim's later formal written statement to the police and that testimonial statement was not admitted or referred to at trial. N.T. Trial, 9/17/18, at 7-9; N.T. Trial, 9/18/18, at 70; N.T. Trial, 9/19/18, at 11-12.

(statements by shooting victim when he was found by the police identifying the person who shot him and describing where and how shooting happened were nontestimonial and their admission did not violate the Confrontation Clause). Because Victim's statements to the responding officers immediately after the robbery that described how he was attacked, described the attacker, and reported that the attacker pointed a knife at him were informal statements for the primary purpose of enabling police to address an ongoing emergency, they were nontestimonial and their admission did not violate the Confrontation Clause. **Bryant**, 562 U.S. at 354, 361-63, 371-78; **Williams**, 103 A.3d at 359-63.

The officer also testified to Victim's statements that the robber stole money, a phone and a ring from him and to the officer's valuation of these items at $4,800. N.T. Trial, 9/18/18, at 61-64. Portions of statements that go beyond information needed to respond to the emergency may be testimonial, even if other portions are nontestimonial. **Davis**, 547 U.S. at 828-29. Because the items stolen and their value do not clearly relate to an ongoing threat of harm, the primary purpose of the statements concerning the stolen items constitutes the obtaining of information concerning past events for a later criminal prosecution, and they are therefore testimonial. **Id.** at 822; **Cheng Jie Lu**, 223 A.3d at 265-66.

Admission of Victim's statements concerning the items stolen from him, however, was harmless error. An error is harmless and does not constitute

grounds for reversal if it could not have contributed to the verdict. *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015); *Commonwealth v. Radecki*, 180 A.3d 441, 461 (Pa. Super. 2018). None of the charges of which Appellant was convicted required proof of the value or nature of property taken in the robbery. The robbery charge required proof only of some theft or attempted theft from Victim, not the value or nature of what was taken, and its grading as a first-degree felony was unaffected by the value of the property in question. 18 Pa.C.S. § 3701(a)(1)(ii), (a)(2), (b)(1); N.T., 9/20/18, at 71-73. The videotape clearly showed Appellant taking objects from Victim after he struck Victim and threatened Victim with a weapon. Commonwealth Ex. 9B. The remaining charges of which Appellant was convicted, possession of an instrument of crime, false imprisonment, and simple assault, did not require any proof that Appellant stole anything from Victim.[6]

_____

[6] Victim's description of how he was hit and knocked down and the description of the attacker, although properly admitted, were also harmless. The assault was shown on the videotape and the description Victim gave of assault was cumulative of what the jury saw on the videotape. Admission of testimonial statements that are merely cumulative of other, admissible evidence that is before the jury is harmless error. *Allshouse*, 36 A.3d at 182-883; *Williams*, 103 A.3d at 363-64; *see also Radecki*, 180 A.3d at 461. Victim's description of the attacker was harmless because it did not identify Appellant at all; rather, Appellant was identified by someone other than Victim and by DNA evidence. In contrast, we cannot agree with the Commonwealth that Victim's statement that the weapon was a knife had no effect on the jury's verdict on the possession of an instrument of crime charge. The videotape does not show the weapon close up. The jury's questions during its deliberations

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to strike a prospective juror for cause and that it did not commit reversible error in admitting testimony concerning Victim's statements to a responding police officer. Accordingly, we affirm the trial court's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/20

---

indicated that it was having difficulty with the issue of whether the Commonwealth met its burden of proving on the possession of an instrument of crime charge that the weapon was a knife. N.T., 9/21/18, at 6-24; Jury Questions Nos. 4-12. Indeed, during its deliberations on that issue, the jury requested to see the police report containing Victim's statement, a request that the trial court, with Appellant's consent, denied. N.T., 9/21/18, at 6-7, 9-13; Jury Questions Nos. 6-8.